IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| GLADYS HARUN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CR 323-003 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, formerly incarcerated at Alderson Federal Prison Camp, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence. (Doc. no. 57.) Respondent moves to dismiss the § 2255 motion, and Petitioner opposes that motion. (Doc. nos. 68, 71.) Petitioner also asks the Court to grant her motion to supplement the record prior to ruling on the motion to dismiss. (Doc. nos. 72, 73.) Respondent opposes Petitioner's request to expand the record prior to considering the merits of the motion to dismiss. (Doc. no. 76.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 68), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 57), the motions to supplement the record prior to ruling on the motion to dismiss be **DENIED** (doc. no. 72, 73), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

### A.    Indictment, Superseding Indictment, and Information

As originally indicted on July 13, 2022, by the grand jury in United States v. Harun, CR 322-009, Petitioner was charged with one count of wire fraud, in violation of 18 U.S.C. § 1343, for filing an application to obtain a loan through the Paycheck Protection Program ("PPP") which fraudulently represented her business averaged $119,965 in monthly payroll. CR 322-009, doc. no. 1, p. 4.  The indictment further alleged Petitioner submitted false IRS Forms and other records in support, ultimately leading to the deposit of nearly $300,000 in a Georgia bank account controlled by Petitioner.  Id.

The indictment followed a May 2022 interview of Petitioner at her workplace by agents with the IRS and Secret Service, during which she was served with a letter issued by the United States Attorney's Office explaining she was a target of a federal grand jury investigation into various fraud related crimes.  United States v. Harun, MJ 122-051, doc. no. 24, p. 24 (S.D. Ga. July 19, 2022).  Approximately two hours after that interview ended, Petitioner withdrew $100,000 in cash from her bank account.  Id. at 24-27.  Petitioner originally testified she withdrew the money to send to a school in Kenya.  Id.  Later, Petitioner changed her story and claimed that she withdrew the $100,000 to pay her first retained attorney, Jimmy Howell. CR 323-003, doc. no. 48, Sent. Tr., pp. 28-29; CR 322-009, doc. no. 5.

On September 8, 2022, the grand jury returned a seven-count superseding indictment charging Petitioner as follows:  Count One, false declaration in violation of 18 U.S.C. § 1623; Counts Two and Seven, wire fraud in violation of 18 U.S.C. § 1343; and Counts Three through Six, money laundering transaction over $10,000 in violation of 18 U.S.C. § 1957.  CR 322-009, doc. no. 38.  Petitioner faced a possible sentence of five years in prison on Count One,

twenty years in prison on Counts Two and Seven, and ten  years in prison on each of Counts Three through Six.  Id., doc. no. 39.  Upon return of the superseding indictment, Petitioner replaced retained attorney Howell with retained counsel Dale Robert Busbee.  Id., doc. nos. 60, 61, 63.

After the expiration of an extended motions filing period, (id., doc. no. 67), Petitioner replaced retained attorney Busbee with retained attorneys Terri L. Thompson and Mohammed S. Luwemba.  Id., doc. nos. 85-87, 89.  The Court granted an additional period of time for newly retained counsel to review the discovery and file any additional pretrial motions.  Id., doc. no. 90.  At the conclusion of that additional motions filing period, the parties filed a Joint Status Report explaining all pretrial motions had been resolved and a negotiated plea agreement had been signed.  Id., doc. no. 91.  To facilitate execution of that negotiated plea agreement, Petitioner was charged in a one-count information with making false statements on or about July 27, 2021, in Dodge County, in a matter within the jurisdiction of the Small Business Administration, an independent establishment within the executive branch of the United States Government by willfully and knowingly making and causing to be made and used a false writing or document knowing that document contained a materially false, fictitious, and fraudulent statement, in violation of 18 U.S.C. § 1001.  United States v. Harun, CR 323-003, doc. no. 1-1 (S.D. Ga. Mar. 29, 2023).  More particularly, Petitioner submitted a false Economic Injury Disaster Loan application on behalf of K.E.W. when she knew K.E.W. did not own a qualifying business during the requisite time period.  CR 323-009, doc. no. 1-1,

p. 4.  The maximum prison penalty Petitioner faced was now reduced to not more than five years.  CR 323-003, doc. no. 2-1.[1]

### B.      Guilty Plea

Pursuant to a written plea agreement, Petitioner pled guilty to the one-count information on  April 27, 2023.  See doc. no. 8 ("Plea Agreement").  In exchange, the government agreed to:  (1) move for an additional one-point reduction under the Sentencing Guidelines if the Court determined Petitioner qualified for a two-point acceptance of responsibility reduction under U.S.S.G. § 3E1.1(a), and Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; (2) recommend to the U.S. Probation Office and the Court at sentencing that, for purposes of U.S.S.G. § 2B1.1, the amount of loss is less than $550,000; (3) recommend Petitioner be sentenced at the low end of the Guidelines range as determined by the Court at sentencing; and, (4) not oppose any request for release on bond pending sentencing, provided Petitioner consented to revocation of release should she violate any conditions of release or seek to withdraw her guilty plea.  Id. at 4.

Notably, however, the plea agreement also specifically explained, "The Court is not bound by any estimate of sentence given or recommendation made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else."  Id. at 3.  The plea agreement further stated the Court could impose a sentence up to the statutory maximum, which was identified as not more than five years in prison.  Id. at 2, 3.  Furthermore, the plea agreement specifically explained Petitioner's Guidelines sentence would be based on all of her relevant conduct, not just the conduct underlying the count to which she was pleading guilty and further

---

[1]All subsequent citations in this Report and Recommendation shall be to the docket in case CR 323-003 unless otherwise specified.

delineated that no one had promised "that the Court will impose any particular sentence or a sentence within any particular range." Id. at 3. The plea agreement also explained the amount of restitution ordered "is not limited to the specific count to which [Petitioner] is pleading guilty." Id. at 5.

Petitioner's plea agreement contained the following factual basis for her guilty plea, which satisfied the elements necessary to prove the offense charged under 18 U.S.C. § 1001(a):

> The Small Business Administration (SBA) is an agency of the executive branch of the United States. Filing submissions to obtain an Economic Injury Disaster Loan (EIDL) is a matter within that agency's jurisdiction.
>
> [Petitioner] prepared an EIDL application on [sic] using the personal identifying information of an individual with the initials K.E.W. In that application, [Petitioner] stated that K.E.W. had a business opened on December 1, 2019. [Petitioner] knew at the time of the application that K.E.W. did not have any such business. [Petitioner] further stated in the application that this business generated $2,114 in gross revenues in 2019 and had $165 in cost of goods sold in 2019, which [Petitioner] also knew to be false. On or about July 27, 2021, in the Southern District of Georgia, and elsewhere, [Petitioner] knowingly made a materially false statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United states. In particular, [Petitioner] submitted EIDL Application 3322814905 into the Southern District of Georgia and to the SBA's servers outside of the State of Georgia.

Id. at 1-2. With her signature on the plea agreement, Petitioner agreed she read and carefully reviewed it with Mr. Luwemba, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 11.

By signing the plea agreement, Petitioner agreed to "waive[] any challenge to venue for this case residing in the Southern District of Georgia," as well as "entirely waive[] [her] right to a direct appeal of [her] conviction and sentence on any ground" unless the Court (1) sentenced her above the statutory maximum, (2) sentenced her above the advisory Sentencing

Guidelines range, or (3) the government appealed the sentence. Id. at 6-7.  Further, Petitioner waived her right to collaterally attack her conviction and sentence on any ground other than ineffective assistance of counsel.  Id. at 7.  By signing the plea agreement, Petitioner additionally attested to her belief that her "attorney has represented [her] faithfully, skillfully, and diligently, and [she] is completely satisfied with the legal advice given and the work performed by [her] attorney." Id. at 9.  Petitioner also waived the protections of Fed. R. Crim P. 11(f) and Fed. R. Evid. 410 limiting the admissibility of statements made during the course of plea discussions or plea proceedings, (id. at 7-8), and agreed that if she failed to plead guilty, withdrew or attempted to withdraw her guilty plea, or committed any new criminal conduct following execution of the agreement, the prosecution would be released from all agreements regarding the sentence, reinstate any counts dismissed under the agreement, and file new charges with the understanding Petitioner waived any statute of limitations or speedy trial defense, (id. at 9).

At the guilty plea hearing, United States District Judge Dudley H. Bowen, Jr., found Petitioner was competent to enter a guilty plea if she so desired.  Doc. no. 47, Rule 11 Tr., p. 7.  Judge Bowen confirmed Petitioner knew that by pleading guilty to an information, she was waiving her right to indictment by a grand jury.  Id. at 4, 8.  Petitioner testified under oath she had sufficient time to discuss her case "in general and in specifics" with Mr. Luwemba.  Id. at 8.  When Judge Bowen asked Petitioner, "[A]re you entirely satisfied with your lawyer's preparation and his handling of your case?" Petitioner answered, "Yes, Your Honor." Id. Petitioner further testified she had been in regular contact with her attorney about plea negotiations, but when she said she had only been over the information upon which the agreement was based one time, one month prior, and "a little" on the morning of the plea

6

proceedings, Judge Bowen paused the proceedings to allow Petitioner and Mr. Luwemba to go over privately the information and "what she's agreeing to here." Id. at 9, 12-13.  Upon resuming the proceedings, the defense confirmed counsel and Petitioner were ready to proceed. Id. at 13-14.

Judge Bowen then had the prosecutor review the charges in the information, including reviewing all of the background paragraphs in detail, and Petitioner confirmed she had reviewed that information with Mr. Luwemba during the prior break in proceedings and entirely understood the information and what the government would have to prove in order to secure a conviction on the charge in the information.  Id. at 14-18.  Judge Bowen then reiterated he needed to know Petitioner understood the elements of the charge to which she was pleading guilty so that she could validly enter a guilty plea, and Judge Bowen again reviewed the charges and what the government would have to prove with admissible evidence beyond a reasonable doubt.  Id. at 19-20.  Petitioner again affirmed she understood.  Id. at 20.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights.  Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to be present in the courtroom during a trial, the right to subpoena, confront, and cross-examine witnesses, and the right to remain silent.  Id. at 20-23.  The plea agreement Petitioner signed also delineated the rights she waived by pleading guilty.  Plea Agreement, p. 8.  Judge Bowen also told Petitioner she was subject to up to five years in prison, three years of supervised release, and a $100 special assessment and that no promises had been made regarding a particular sentence.  Rule 11 Tr. 26.  Judge Bowen specifically explained that the prosecutor had agreed to recommend

a certain sentence, "[b]ut that is not an agreement with respect to the sentence." When asked if she understood, Petitioner responded, "Yes, Your Honor." Id.

Judge Bowen went on to parse the details of the sentencing recommendation, including calculating the Guidelines sentence based on a loss of less than $550,000 and an agreement "to pay restitution for the full loss caused by the [Petitioner's] total criminal conduct which is not limited to the specific count to which she is pleading guilty." Id. at 27. Although there was not yet a completed calculation on restitution, the prosecutor confirmed the amount was under $550,000. Id. at 28. Judge Bowen also explained the Court could impose a payment schedule for restitution, and even with such a schedule in place, the government could take all actions available to them to collect any of Petitioner's assets found, regardless of the schedule. Id. at 28-29.

Judge Bowen also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 29. Judge Bowen explained Petitioner would be waiving her right to appeal unless the sentence exceeded the statutory maximum penalty or the applicable advisory Guidelines range, or if the government filed an appeal. Id. Additionally, Judge Bowen reviewed Petitioner was giving up the right to a collateral attack, a habeas corpus or some other attack on the fact of conviction or sentence except for a claim of ineffective assistance of counsel. Id. Judge Bowen also explained Petitioner agreed to waive any challenge to venue regarding the case proceedings in the Dublin Division of the Southern District of Georgia. Id. at 30. When asked if she had been forced, threatened or pressured into pleading guilty, Petitioner responded, "No, Your Honor." Id. at 24. Judge Bowen confirmed that, other than the promises the government made in the plea agreement, no one had made her

8

any promises in order to get her to plead guilty. Id. at 31. Petitioner confirmed her understanding of the plea agreement. Id. at 30.

Judge Bowen then heard a factual basis for the guilty plea from Special Agent Brian Truax with the United States Secret Service, Savannah Office. SA Truax explained the SBA is an executive branch government agency that assisted small businesses during the COVID pandemic with obtaining an EIDL by accepting applications requiring disclosure of certain financial information about gross revenues and cost of capital goods during a specified time period. Id. at 33-34. During his investigation of Petitioner, SA Truax became aware of an EIDL application for Katina Wells, a resident of Dodge County, Georgia, and identified as K.E.W. in the information. Id. at 34-35. Upon interviewing Ms. Wells, SA Truax discovered Petitioner was a friend of Ms. Wells's mother and through that relationship had prepared Ms. Wells's taxes. Id. at 35. On July 27, 2021, EIDL application number 3322814905 had been submitted in the name of Katina Wells, and Ms. Wells confirmed Petitioner prepared that application. Id. at 35-36. After reviewing the EIDL application, interviewing Ms. Wells, and reviewing emails between Ms. Wells and Petitioner, SA Truax determined the application falsely stated (1) Ms. Wells was an independent contractor that opened a business on December 1, 2019, (2) the business had over $2000 in revenues in 2019, and (3) the fictitious business had gross receipts for 2019. Id. at 36-37.

Upon conclusion of SA Truax's testimony, Petitioner equivocated when Judge Bowen asked if she had any disagreement with the testimony, and she asked whether she could give her version of the facts. Id. at 37-38. Upon further inquiry from Judge Bowen, Petitioner stated she prepared the EIDL application, took responsibility for it, but she "didn't know anything was wrong because I used her data in 2019." Id. at 39-40. Judge Bowen asked again

9

if Petitioner knew the application contained false information, and this time Petitioner answered, "Yes." Id. at 40. For the second time during the Rule 11 proceedings, Judge Bowen stopped the proceedings and directed Mr. Luwemba to confer with his client because of concerns that taking a guilty plea on the current record would be improvident. Id. at 41. After Petitioner conferred with Mr. Luwemba and co-defense counsel Ms. Thompson and returned to the court room, Judge Bowen again asked Petitioner if there was anything in SA Truax's testimony with which she disagreed, and she responded, thrice, "No, Your Honor." Id. at 41-42.

> Judge Bowen then summarized as follows:
>
> Q:    All right.  And let me be very direct with you, Ms. Harun.  Do you understand entirely that this is not just one matter related to KEW . . . ?
>
> . . .
>
> A:    Yes, Your Honor.
>
> Q:    And they are saying now that it involves some three or $400,000 of EIDL falsifications.  Do you understand that?
>
> A:    Yes, Your Honor.
>
> Q:    All right.  And do you also understand that you will be facing restitution for some amount in that category or area?
>
> A:    Yes, Your Honor.
>
> Q:    I don't know what it is.  I don't pretend to state it for you, but I just don't want you to come back and say you misunderstood something along that line.  Do you understand me?
>
> A:    Yes, Your Honor.
>
> Q:    Is there anything else you want to tell me or any exculpatory statement you want to make?
>
> A:    No, Your Honor.

10

. . .

Q:      Ms. Harun, how do you want to resolve this case?

A:      Pleading guilty.

Q:      And by that do I understand that you wish to plead guilty consistent with the terms of your Plea Agreement?

A:      Yes, Your Honor.

Q:      Are you, in fact, guilty as charged in this Information?

A:      Yes, Your Honor

Q:      And do you understand that the court will be considering the entirety of your criminal conduct, other falsifications and deceits?

A:      Yes, Your Honor.

Id. at 42-43.

### C.      Sentencing

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at 20, Criminal History Category at I, and a Guidelines imprisonment range of 33 to 41 months.  (Doc. no. 28, ("PSI") ¶¶ 85, 131.) Rejecting the recommendation in the plea agreement regarding loss calculation based on an amount less than $550,000, the offense level was calculated based on a total intended loss amount of $949,754.14 - more than $550,000, but not more than $1,500,000, for a 14-level increase to the base offense level.  PSI ¶¶ 68, 78.  Petitioner did not receive any reduction for acceptance of responsibility and received a two-level enhancement for obstruction of justice because she contacted her son while she was incarcerated and asked him to hide cash in their home.  PSI ¶¶ 72, 74, 81, 84.  Petitioner, however, did receive a two-level reduction as a "zero-point offender" under U.S.S.G. § 4C1.1(a) & (b).  PSI ¶ 83.

The actual loss and restitution amount listed in the PSI as owed to the SBA was $552,679.14, calculated based on five fraudulent PPP loans and two EIDL loans which were funded illegitimately based on Petitioner's actions. For each PPP loan, the PSI included the amount for which the loans were funded and the lender fees. PSI ¶ 67. As for the two EIDL loans, the PSI included the amounts funded. PSI ¶ 67. The PSI also reported Petitioner intended a further loss to the SBA of $397,075 for a sixth, fraudulent PPP application, (PSI ¶¶ 25, 29, 68), but that amount was not included in the final calculation of $552,679.14 because the loan was not funded after the Financial Crimes Investigations Unit at Wells Fargo Bank noticed inconsistencies in font text and color, and box alignment irregularities, (PSI ¶¶ 29, 68). The PSI also acknowledged when various PPP loans had been forgiven. PSI ¶ 25, 68. The PSI set forth the victim in the case, the SBA, requested a total of $552,679.14 in restitution. PSI ¶¶ 69, 141.

After the Initial PSI was issued on June 27, 2023, for review and submission of objections, (doc. no. 9), Judge Bowen denied a request for withdrawal by Petitioner's third retained defense team, (doc. nos. 10, 11). On July 31, 2023, Judge Bowen discharged retained attorneys Thompson and Luwemba and extended the deadline for filing objections to the PSI until August 31, 2023. (Doc. no. 16.) Approximately one week before this extended deadline, Petitioner began a quest for appointed counsel. (See doc. no. 17.) The Court appointed attorney Johnny Vines to represent Petitioner, and the deadline for objecting to the PSI was extended to October 20, 2023. (Doc. nos. 22, 25, 27.) The government did not submit any objections, but Mr. Vines submitted several objections. See PSI Addendum. While some objections were resolved prior to sentencing, objections remained relating to restitution and calculation of the Guidelines sentence under U.S.S.G. 2B1.1 based on loss amount, as well as

denial of an acceptance of responsibility reduction.  See id.

At the January 23, 2024 sentencing, Judge Bowen confirmed Petitioner and Mr. Vines had reviewed the PSI and had three outstanding objections.  (Doc. no. 48, Sent. Tr., p. 3.)  The first two objections related to the total loss amount as related to the restitution amount and a total offense level alleged to be at least two levels too high based on the loss.  PSI Addendum, pp. 1-2.  Petitioner objected to the total amount of actual loss because in accordance with the plea agreement, the amount should be less than $550,000, and the money that was received "was used in accordance with SBA rules and regulations."  Id. at 1.  In support of the objection, Petitioner provided documentation on the letterhead for one of the non-profit companies Petitioner operated, whose legitimacy was questioned during the criminal investigation, and the figures listed were not supported by receipts or proof of expenditures.  Id. at 1-2.  Judge Bowen pointed out that the actual spending of the money did not matter if it was wrongfully obtained.  Sent. Tr. 5.  Mr. Vines agreed.  Id.  Petitioner also argued one of the EIDL loans for Jane Njeru was in repayment, and therefore the $119,810.71 amount for that loan should be deducted from the calculated restitution amount.  Sent. Tr. 35.  Petitioner also objected the total offense level was not calculated as agreed in the plea agreement.  PSI Addendum, p. 2.

The prosecutor argued that PSI numbers were consistent with the loans received, or applications facilitated, by Petitioner, and IRS SA Brian Jack and SA Justin Lott with the SBA, Office of Inspector General, were present and testified how the numbers were calculated.  Sent. Tr. 4-21.  SA Jack explained the details of the investigation, including the procedures and requirements for obtaining PPP and EIDL money and how it was determined the loans Petitioner obtained or applications she had prepared for others used in the restitution calculation were fraudulent;  the investigation uncovered Petitioner had grossly inflated her

payroll, and upon interviewing the four individuals for whom Petitioner had prepared loan applications, learned they did not have businesses during the timeframe required by the SBA to obtain the money under the designated programs. Sent. Tr. 6-11.  SA Lott explained the calculation behind the amount, explained there was an overwhelming lack of supporting documentation for expenditures but the government had tracked various wire payments to Africa or other non-eligible spending for either EIDL or PPP loans, and acknowledged that payments applied to the loan for Jane Njeru brought the total amount of actual loss down to $547,095.07.  Sent. Tr. 12 -20.

As to the third and final objection regarding denial of a reduction for acceptance of responsibility, Petitioner argued she submitted a written statement accepting responsibility for her actions that should qualify for a three-level reduction.  PSI Addendum, p. 2; Sent. Tr. 34-35.  The Probation Office supported its denial by pointing to an attempt to obstruct justice by tampering with a witness, the direction to Petitioner's son to hide cash at her home, and the government's assertion of Petitioner's untruthfulness at the June 27, 2022 proffer.  PSI Addendum, p. 3; PSI ¶¶ 70-73.

Petitioner also testified under oath at sentencing, stating she had operated twelve Jackson Hewitt locations with fifty employees and had used the PPP loans as required, any discrepancy in payroll numbers were the result of "issues" with her payroll provider, and she therefore actually qualified for the PPP loans and had confirmed as much with the SBA.  Sent. Tr. 22-24.  Petitioner also stated the applications she had submitted on behalf of others were appropriate based on their prior tax returns indicating independent contractor status.  Id. at 24, 26.  Petitioner maintained she had verified with the SBA that she qualified for the loans, and she said that although she could have made a mistake, she was not "trying to rob the

government or anything." Id. at 29-31.  When pressed on whether she was attempting to say all loan applications were legitimate after pleading guilty, Petitioner would say only that the application for Katina Wells, to which she pleaded guilty, was missing some information.  Id. at 32-33.  Although Petitioner stated she had proof to support her claims of appropriate loan applications, she did not provide anything to the Court, even after pausing to consult with Mr. Vines, to whom she claims to have submitted the proof.  Id. at 31.

Judge Bowen overruled the first objection on actual loss, noting the only genuinely supported amount of actual loss was the sum of $547,095.07 as testified to by SA Lott because Petitioner's documentation was "self-serving, auto-supportive writing which has no basis or support in genuine or conventionally accepted business practices."  Id. at 35.  Judge Bowen again emphasized, "With respect to questions of how monies were spent, it may seem important to [Petitioner], but it's unimportant to the Court because these loans, forgivable or not or grants, EIDL, PPP or otherwise were obtained generally by false pretenses, false statement which is the offense to which she plead guilty."  Id. at 35-36.

However, Judge Bowen did agree to accept the terms of the plea agreement with respect to calculating the sentence based on a loss of less than $550,000 and directed a recalculation of the actual loss and other dependent figures.  Id. at 36.  As to the third and final objection regarding acceptance of responsibility, Judge Bowen overruled it, finding no level of remorse, contrition, or other genuine demonstration of regret.  Id. at 36-37.  Thus, the advisory Guidelines range was 27 to 33 months of imprisonment and restitution in the amount of $547,095.07, with a maximum statutory penalty of five years.  Id. at 37.

After announcing the sentence calculation, Judge Bowen cautioned Petitioner he was considering imposing a sentence up to the statutory maximum and asked if Petitioner would

15

like to delay imposition of a sentence and provided time for her to discuss the matter with Mr. Vines. Id. at 38. After conferring, Petitioner chose to move forward but announced that she wanted to revisit the issue of restitution. Id. at 38-39. Judge Bowen explained that just because the loss amount had been established, it was not required to be ordered as restitution and Petitioner would be able to address anything to wanted to discuss in allocution. Id. at 39.

Prior to imposition of sentence, Judge Bowen heard mitigation testimony from Petitioner's son, daughter, and cousin concerning Petitioner's motherly supportiveness, her hard work and community service, and her willingness to help the needy file their taxes at discounted rates. Id. at 40-44. Mr. Vines also submitted character reference letters from various friends in the United States and clergy in Africa who had worked with Petitioner on school and community service projects. (See doc. no. 33.) Petitioner also spoke on her own behalf, recounting her youth in Kenya, realization of the American dream after arriving in the United States with only $20, her ongoing charity work in Africa, and her contention that coming from another country caused her to not "really understand how to do stuff in America," and she never intended to wrong anyone. Sent. Tr. 45-48. She did not mention any missing exculpatory or explanatory documentation. Mr. Vines argued any perception that Petitioner had not expressed remorse was due to a language and cultural barrier, Petitioner was remorseful, and Judge Bowen should impose at sentence at the low end of the Guidelines range and a restitution amount of $433,181.12 or less. Id. at 48-49.

Judge Bowen adopted all statements to which no objections were filed or expressed during the sentencing proceedings as the Court's own findings of fact, recognized the Guidelines sentence announced after having overruled specific objections, stated the restitution amount of up to $547,095.47, and confirmed the statutory maximum penalty of five

years.  Id. at 50.  Prior to imposing the sentence, Judge Bowen questioned Petitioner's self-serving statement of confusion about "how to do stuff in America" and noted she "has used an accent or apparent linguistic inability and her multi-cultural knowledge to her advantage in every way."  Id. at 52-53.  Judge Bowen summarized:

> I will be as candid and direct as I must in this matter.  [Petitioner] has given us a self-serving, ludicrously-optimistic statement of how the money was spent for legitimate business purposes while the facts are more as Special Agent Lott has testified.  I know that some entities, some corporations, some gifted prevaricators have applied for and stolen more federal money than this lady has; nevertheless, for someone who sometimes you don't know how to do stuff in America, for someone to apply for and obtained EIDL and PPP funds well over a half million dollars, as far as her capability and her ingenuity at stealing money from the government from a program devised in haste by the most well-intended Congress form the most benevolent sovereign on earth, [Petitioner] has done about as well as anyone could do.  As far as defrauding the United States of America, she is a success story with few equal.
>
> . . . I see here a pattern of activity, a practiced art, if you will, in her relevant conduct that shows more than an utter disregard for the legitimate business owners and taxpayers of America.  I see a virtual contempt for those entities that make all of this possible, an almost vindictive effort take as much as possible and to flaunt it.

Id. at 53-54.

Judge Bowen then, in light of the 18 U.S.C. § 3553(a) factors, to particularly include deterrence, varied upward and sentenced Petitioner to the statutory maximum of 60 months in prison and ordered restitution in the amount of $552,679.14, although an order correcting the restitution amount to $547,095.07 was later entered.  Id. at 54, 56, 58; see doc. no. 39.  Judge Bowen re-iterated Petitioner had shown no genuine contrition of guilt, and every intentional, calculated act by Petitioner "was for her benefit or for the benefit of her own individualized idiosyncratic purposes."  Sent. Tr. 55.  The original indicted charges from CR 322-009 were dismissed, and Judge Bowen reminded Petitioner of her right to appeal in light of the

17

imposition of the statutory maximum sentence that exceeded the Guidelines sentence as found by the Court.  Id. at 59.

###### D.      Post-Conviction

Despite the available exception to the direct appeal waiver in her plea agreement, Petitioner did not file a direct appeal.  Rather, the day after sentencing, Mr. Vines and Petitioner signed a post-conviction consultation certification in which they both attested that Petitioner decided not to file an appeal after Mr. Vines (1) explained to Petitioner the appeal process, including the right to a direct appeal, (2) advised Petitioner about the advantages and disadvantages of pursuing an appeal, and (3) inquired of Petitioner whether she wanted to file an appeal.  (Doc. no. 37.)

On June 4, 2024, Petitioner motioned for a reduction of her sentence pursuant to 18 U.S.C. § 3582(c)(2), but that motion was denied because she had already received a two-level reduction to her offense level based upon her zero-point offender status.  (See doc. nos. 43, 44.)  Petitioner also filed several unsuccessful motions for extensions of time to file a § 2255 motion and to compel the production of case documents and discovery.  (See doc. nos. 49-55.)

###### E.      § 2255 Proceedings

Having failed to secure an extension of time, Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct her sentence, but she did not substantially follow the format of the form for a § 2255 motion.  See Rule 2(c) of the Rules Governing Section 2255 Proceedings for the United States District Court.  Rather, she submitted a fifty-two page "Pro Se Motion for Ineffective Assistance of Counsel Under Authority of 28 U.S.C. 2255 and Stay of Monetary Forfeiture of 547095.07 $," as well as a "Statement of Facts and Declaration of

Gladys Harun" which includes over two hundred pages of exhibits.  (See doc. nos. 57, 58.) Rather than specifically enumerate grounds for relief with facts specific to each claim, Petitioner generally claims she received constitutionally ineffective assistance of counsel from various of her three teams of retained counsel and one appointed attorney that failed to root out prosecutorial misconduct and overreach during the investigation and prosecution of her crimes, the result of which was entry of an involuntary guilty plea and incorrect restitution calculation.  Petitioner then generally points to any of the hundreds of pages of exhibits, which include voluminous bank records, and asks the Court to conclude those records show she is entitled to relief.  (See generally doc. nos. 57, 58.)  Further complicating the matter, Petitioner also argues she did not commit crimes which were no part of the information to which she pleaded guilty.  (See, e.g., doc. no. 57, p. 28 (arguing Petitioner did not commit money laundering or wire fraud).)

This scattershot approach violates the pleading requirements for a § 2255 motion.  The Eleventh Circuit has explained "the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading' as authorized under Federal Rule of Civil Procedure 8(a)" and recognizes the Supreme Court has also observed "[h]abeas corpus petitions must meet heightened pleading requirements."  Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (citing McFarland v. Scott, 512 U.S. 849, 856 (1994)).  Moreover, as described above, Petitioner was represented at various times by retained attorneys Howell, Busbee, Luwemba, Thompson, and appointed counsel Vines, but Petitioner's motion often refers to "all attorneys" without specifically identifying who took, or failed to take, any specific action.  (See, e.g., doc. no. 58, p. 8 ¶ 99 ("All attorneys in this case refused to conduct appropriate investigations both factual and legal."); ¶ 103 ("Attorneys failed to track down readily available and likely useful evidence

19

and witnesses that I asked them to obtain."); ¶ 104 ("Attorneys failed to impeach perjured government witnesses.").) However, the requirement for fact-specific pleading applies with equal force for ineffective assistance of counsel claims. Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (*per curiam*) ("Conclusory allegations of ineffective assistance are insufficient.").

Despite these pleading deficiencies, the Court has carefully reviewed Petitioner's filings and finds that grouping Petitioner's claims, to the extent they can be deciphered, as pre- and post-plea claims relating to whomever was counsel of record at the time of the alleged error, accurately and completely reflects the claims raised in Petitioner's § 2255 motion. Accordingly, the Court determines Petitioner's § 2255 motion raises the following ten grounds for relief:

Prior to entry of Petitioner's guilty plea, she received ineffective assistance of counsel as follows:

(1) Counsel failed to challenge venue;

(2) Counsel failed to adequately investigate and challenge her guilt, to include failing to hire a loan specialist to dispute the prosecution's "distorted" view of the loan applications prepared by Petitioner;

(3) Counsel failed to challenge the government's flawed investigation that improperly concluded the loan applications prepared by Petitioner were improper;

(4) Counsel failed to succeed in having all of Petitioner's charges dismissed;

(5) Counsel failed to challenge prosecutorial misconduct of not disclosing material under Brady v. Maryland, 373 U.S. 83 (1963), and bringing charges against Petitioner that violated her rights under the Contracts, Takings, and Double-Jeopardy Clauses instead of allowing her to use the loan proceeds for permissible purposes; and

(6)     Counsel failed to challenge the Court's consideration of false evidence when accepting the guilty plea and calculating a sentence.

(Doc. no. 57, pp. 7-11, 14, 17-18, 21, 25, 28-35, 39-42, 44-51; see generally doc. no. 58, pp. 1-9.)

After entry of Petitioner's guilty plea, she received ineffective assistance of counsel as follows:

(7)     Counsel failed to challenge the prosecutor's sentencing presentation as (a) speculative, and (b) containing false testimony from IRS SA Jack concerning the investigation of the charges leveled against Petitioner; and

(8)     Counsel failed to adequately present mitigation evidence at sentencing, which resulted in (a) an above-the Guidelines sentence that breached the plea agreement, (b) imposition of an improperly high amount of restitution; and (c) imposition of a payment schedule that impermissibly differed from the loan repayment schedule.

(Doc. no. 57, pp. 38, 40, 42; doc. no. 58, pp. 7, 8.)

Finally, Petitioner raises the following stand-alone claims of error:

(9)     The restitution amount was unfairly harsh and improperly included loan amounts that had been forgiven; and

(10)    The Court improperly calculated her Guidelines sentence.

(Doc. no. 57, pp. 17, 24, 28, 43-44, 50-51; doc. no. 58, pp. 7, 8.)

As relief, Petitioner requests her guilty plea and sentence be vacated, as well as a "stay" of the restitution order. (Doc. no 57, p. 52.)

Respondent filed a motion to dismiss, contending Petitioner's claims are not cognizable in these proceedings, fail on the merits, are impermissibly vague and unsupported, or are otherwise waived by her knowing and voluntary guilty plea. (See generally doc. no. 68.) Petitioner opposes the motion dismiss. (See generally doc. no. 71.)

## II. DISCUSSION

### A. No Evidentiary Hearing or Expansion of Record Required

Petitioner requests a hearing on her § 2255 motion. (Doc. no. 57, p. 52.) However, § 2255 does not require an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a hearing is not required "if the allegations are affirmatively contradicted by the record." Martin v. United States, 949 F.3d 662, 670 (11th Cir. 2020) (citations omitted).

Stated otherwise, a petitioner is not entitled to an evidentiary hearing where she asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238-39 (11th Cir. 2004). While ineffective assistance of counsel claims often require a hearing for development of an adequate record, an evidentiary hearing is not required every time such a claim is raised. Rosin v. United States, 786 F.3d 873, 878-79 (11th Cir. 2015); Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984). Rather, a petitioner must allege "reasonably specific, non-conclusory facts that, if true, would entitle [her] to relief." Griffith v. United States, 871 F.3d 1321, 1329 (11th Cir. 2017). Because Petitioner's claims are barred by her valid plea agreement, lack merit as a matter of law, or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary.

Similarly, Petitioner's motions to expand the record prior to ruling on Respondent's motion to dismiss should be denied because under Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts, "[*i*]*f the motion is not dismissed*," the judge may order expansion of the record.  See Rule 7(a) (emphasis added).  The Court need not exercise its discretion to expand the record, particularly where, as discussed in detail below, Petitioner's claims are conclusory and speculative or otherwise can be resolved based on the existing record.  See Prada v. United States, 692 F. App'x 572, 574-75 (11th Cir. 2017) (*per curiam*); Wilson v. United States, Case Nos. 8:15-cv-2801 / 8:13-cr-207, 2017 WL 3923096, at *1-2 (M.D. Fla. Sept. 7, 2017).  Moreover, as discussed in detail below, Petitioner's knowing and voluntary guilty plea places Petitioner's guilt beyond question, and Petitioner's attempts to justify how she spent the fraudulently obtained money are not material to the one charge to which she pleaded guilty and do not impact the actual loss calculation, which is based on the amount of loans (and associated lender fees) obtained by false pretenses, not the manner in which the funds were spent once Petitioner obtained them.  As the existing record is sufficient to determine the merits of case and make a recommendation to grant the motion to dismiss, the Court **REPORTS** and **RECOMMENDS** the motions to supplement the record prior to ruling on the motion to dismiss be **DENIED**.  (Doc. nos. 72, 73.)

**B.      Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim**

Ineffective assistance of counsel claims are subject to the two-part test enunciated in in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*).  Under the first prong, Petitioner must show "counsel's representation fell below an objective

23

standard of reasonableness." Strickland, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001). It is not enough to show ignorance of the law. Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997). "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel." Id. The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).

Counsel is not required to "pursue every path until it bears fruit or until all available hope withers." Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)). The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry. As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that [s]he is in fact guilty of the offense with which [s]he is charged, [s]he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. [S]he may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson], 397 U.S. 759 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (*en banc*) (quoting Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (*per curiam*)).  When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (*per curiam*).  Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  Wofford, 748 F.2d at 1508. Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  "A tactical decision is ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."  Davidson v. United States, 213 F. App'x 769, 770 (11th Cir. 2007) (*per curiam*) (citation omitted).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."  McMann, 397 U.S. at 770.

The Supreme Court described at length the impact of a guilty plea on the Strickland deficiency analysis in Premo v. Moore, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty.  Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel."  Id.  Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic

25

choices in balancing opportunities and risks." Id. at 124.  Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." Id. at 126.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).  The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable

26

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Moreover, in the context of a guilty plea, in addition to showing counsel's representation fell below an objective standard of reasonableness, "the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012). In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58. The prejudice determination is not based on whether a petitioner would have ultimately prevailed on the specific issues underlying the ineffectiveness claim, "but instead on whether [a petitioner] would have pleaded guilty had counsel's performance not been deficient." Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (*per curiam*). In particular, "a petitioner must

27

convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1263 (11th Cir. 2015) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).   Thus, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, she would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

### C.   Petitioner Is Not Entitled to Relief on Any of the Pre-Plea Ineffective Assistance Claims in Grounds One through Six

Petitioner asserts "counsel" provided ineffective assistance in the pre-plea phase of the case when they failed to undertake certain actions or make certain arguments pertaining to the manner in which the government conducted its investigation and prosecution.  These claims are barred by entry of a valid guilty plea, and in any event are devoid of merit.

### 1.   Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Grounds One through Six

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional

sense." United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997). A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into her plea, if a defendant does not understand the nature of the constitutional protections she is waiving, or "if a defendant has such an incomplete understanding of the charge that h[er] plea cannot stand as an intelligent admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters h[er] guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of h[er] plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of h[er] conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], [s]he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2. Judge Bowen's Colloquy with Petitioner Satisfied the Core Principles

Judge Bowen informed Petitioner in clear terms of the charge to which she was pleading guilty, and Petitioner testified she understood the charge and what the government would have to prove in order to convict her. Rule 11 Tr. 14-18, 20. Petitioner's confirmation she understood the charge and the proof necessary to convict her came after Judge Bowen specifically took a recess to allow Petitioner and defense counsel to review the charge in the

29

information, the prosecutor reviewed the information in detail on the record, and Judge Bowen repeated the charge and asked Petitioner if she had any additional questions.  Id.

Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed she understood her decision to plead guilty would result in a waiver of these rights.  Id. at 20-23.  Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get her to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 24, 31.  Petitioner affirmed that no one had given her any promise as to the sentence that would be imposed, and Judge Bowen reviewed the details regarding calculating a Guidelines sentence based on a plea agreement recommendation.  Id. at 26-27.

Additionally, Judge Bowen informed Petitioner of the possible penalty she faced upon conviction.  In particular, Judge Bowen confirmed Petitioner understood the maximum penalty of five years in prison, three years of supervised release, and a $100 special assessment for the charge to which she was pleading guilty.  Id. at 26.  Petitioner also testified she had enough time to discuss the case with Mr. Luwemba and was entirely satisfied with counsel's preparation and handling of her case.  Id. at 8; see also Plea Agreement, p. 9 ("Defendant believes that Defendant's attorney has represented Defendant faithfully, skillfully, and diligently, and Defendant is completely satisfied with the legal advice given and the work performed by Defendant's attorney.").  When Petitioner hedged on whether she had adequately reviewed the information with Mr. Luwemba, Judge Bowen paused the proceeding so they could privately review "what [Petitioner's] agreeing to here." Rule 11 Tr. 9, 12-13. Despite multiple opportunities to do so, Petitioner expressed no hint of dissatisfaction with Mr.

Luwemba, or any of her previously retained counsel for that matter, when she appeared before Judge Bowen.

At the Rule 11 hearing, Petitioner also admitted to the factual basis for the guilty plea offered by SA Truax, which included details of his investigation of the EIDL application prepared by Petitioner on behalf of Dodge County, Georgia resident Katina Wells. Rule 11 Tr. 33-37; see also Plea Agreement, p. 2 (outlining factual basis for guilty plea). When Petitioner initially equivocated on whether she had any disagreement with SA Truax's testimony because she "didn't know anything was wrong" with the information used in the EIDL application for Katina Wells, Judge Bowen again stopped the proceedings so that both Mr. Luwemba and Ms. Thompson could confer with Petitioner; Judge Bowen specifically voiced his concern that it would be improvident to take Petitioner's guilty plea given the current circumstances. Rule 11 Tr. 40-41.

After concluding that conference and returning to the courtroom, Petitioner thrice responded, "No, Your Honor," when asked if she had any disagreement with SA Truax's testimony regarding the factual basis for the guilty plea. Id. at 41-42. Judge Bowen also explicitly confirmed two more times Petitioner knew that despite pleading to only one count in the information, she would face restitution in the hundreds of thousands of dollars based on her entire criminal conduct, other falsifications and deceits. Id. at 42, 43. When specifically asked if "there was anything else" she wanted to tell Judge Bowen, "or any exculpatory statement" she wanted to make, Petitioner responded, "No, Your Honor." Id. at 43. Judge Bowen then accepted the guilty plea. Id.

Thus, Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of her guilty plea, and that Petitioner was not

31

coerced into pleading guilty. See Moriarty, 429 F.3d at 1019. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea.

In sum, Petitioner has not shown a reasonable probability that but for any alleged error at the Rule 11 proceeding she would not have entered her guilty plea. See Dominguez Benitez, 542 U.S. at 83. "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, [s]he bears a heavy burden to show h[er] statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that [s]he swore falsely"). Judge Bowen provided every opportunity for Petitioner to raise the issues about which she now complains regarding the investigation by counsel and the government of her fraudulent activity, as well as any issues with the factual basis for her guilty plea in CR 323-003 or information available to challenge the original charges in the indicted CR 322-009. Stated otherwise, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal." Harris v. United States, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), adopted by, 2011 WL 1740306 (S.D. Ga. May 5, 2011). As Petitioner's plea was knowing and voluntary, her claims in Grounds One through Six, which are misguided attempts to undo her prior admission of guilt made in exchange for a very beneficial reduction in the original charges and potential penalties, are barred.

Nevertheless, because Petitioner alleges constitutionally ineffective assistance from "counsel" led to the entry of her guilty plea, the Court addresses the merits of Petitioner's Grounds One through Six claims below.  See, e.g., Wofford, 748 F.2d at 1508 (explaining "accused who has not received reasonably effective assistance from counsel in deciding to plead guilty cannot be bound by h[er] plea"  (citations omitted)).

### 3.    Even if the Claims Were Not Barred by Entry of a Valid Guilty Plea, the Claims Are Without Merit

Petitioner's pre-plea claims center around alleged deficient performance by "counsel" that resulted in baseless charges against Petitioner.  According to Petitioner, if only counsel would have more thoroughly investigated the charges against her and challenged the government's analysis of her business activity, including challenging venue and hiring a "loan specialist," she would have been exonerated of all charges and not forced to repay loan proceeds that were used for permissible purposes.  Most difficult for Petitioner to overcome is her prior sworn assertions to Judge Bowen she had enough time to discuss the case with the attorneys who negotiated the very favorable plea agreement and was entirely satisfied with their preparation and handling of the case.  Rule 11 Tr. 8; see also Plea Agreement, p. 9.  Judge Bowen also stopped the Rule 11 proceedings multiple times to allow Petitioner additional time to review with counsel the charge and factual basis for the guilty plea, as well as to clarify the Court would consider the entirety of Petitioner's criminal conduct at sentencing.  Rule 11 Tr. 9, 12-13, 41-42.  These sworn assertions contradict her current claims of dissatisfaction with the preparation by, and her interaction with, counsel prior to the guilty plea proceedings.  Moreover, Petitioner has not shown a decision to reject her plea agreement based on any of these alleged pre-plea errors would have been rational under the circumstances, particularly

where her plea agreement reduced her potential imprisonment exposure from twenty to five years.  See Diveroli, 803 F.3d at 1263.

As to the venue challenge in Ground One, Petitioner never contested it as part of the written plea agreement or objected to it after hearing the testimony by SA Truax, both of which identified the Southern District of Georgia and Dodge County as the residence of Katina Wells and the location where Petitioner made materially false statements.  Petitioner also knowingly waived any venue challenges as part of her plea agreement.  Plea Agreement, p. 7.  Indeed, at the change of plea proceedings, Petitioner herself identified Dublin, within the Southern District of Georgia, as one of the places she was hiring employees for one of her twelve Jackson Hewitt tax locations.  Rule 11 Tr. 5.  To the extent Petitioner conflates venue with jurisdiction, (doc. no. doc. no. 71, p. 19), or otherwise suggests making false statements under 18 U.S.C. § 1001(a)(2) is not a federal crime, (doc. no. 57, pp. 3, 7, 33), there was no basis for counsel to object.  Katina Wells was a resident of Dodge County, Georgia, (Rule 11 Tr. 35), and Petitioner pleaded guilty to making a false statement in the EIDL application submitted on behalf of Ms. Wells.  Thus, in addition to waiving any venue challenge as part of her voluntary plea agreement, there was a factual basis for placing venue in the Southern District.  Moreover, federal district courts have jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231.  There was no valid basis for counsel to object to venue.

Regarding the investigation and prosecution of her case, given every opportunity at the change of plea proceedings to tell Judge Bowen anything she wanted, Petitioner said nothing about any failure of counsel to investigate her claims or challenge her guilt, prosecutorial misconduct, or false testimony from government investigators as now claimed in Grounds Two, Three, and Six.  When Petitioner did try to equivocate on her responsibility for preparing

34

the EIDL application for Katina Wells that contained false statements, Judge Bowen stopped the proceedings, had Petitioner privately meet with counsel, and then confirmed at least three more times that Petitioner had no disagreement with the factual basis for her guilty plea.  Rule 11 Tr. 40-43.  Petitioner does not identify specific factual information she identified to counsel that was not investigated or would have made a difference to her case.

Rather, she now attempts to rely on her after-the-fact interpretation of her own bank records, that would have been in her possession even before she was indicted, to support her self-serving position.  For example, Petitioner states, "I emailed Luwemba all my payroll documents but they both failed to inspect potentially exculpatory evidence."  (Doc. no. 58, p. 7, ¶ 80.)  There is no description or specific identification of what this "potentially exculpatory evidence" might be.  Moreover, prior to indictment, when federal agents were investigating multiple PPP applications with differing and fraudulent information about the number of employees and monthly payroll for Petitioner's business, Petitioner was unable to provide any supporting documentation through a grand jury subpoena.  (Doc. no. 36, pp. 6-7.)  Petitioner's bank records were, however, as explained in detail in the PSI, already examined and analyzed in detail regarding Petitioner's offense conduct and loss amount.  PSI ¶¶ 23-31; 67-68.  SA Lott also reviewed the details of those records at sentencing.  Sent. Tr. 12-20.

Nor does Petitioner explain the "bias" she faced in creating loan applications or how a "loan specialist" could have "resolved" that alleged bias in a manner that would have provided a viable defense.  (See doc. no. 57, p. 44.)  She also relies on pure speculation as to how the government investigated her case to suggest any viable challenge to her wrongful conduct could have been made.  For example, Petitioner asserts SA Jack "did not review the documents that Petitioner uses to prepare tax returns and loan applications for her clients.  He did not

35

review records associated with applications for Jane Njeru, Esther Njoroge, Melinda Hoven [and] Jacqueline Black." (Doc. no. 57, p. 45.)  SA Truax with the Secret Service testified at the change of plea proceeding that he reviewed the application of Katina Wells, which was the basis for the charge to which Petitioner pleaded guilty.  Rule 11 Tr. 35.

At sentencing, IRS SA Jack detailed his investigation with respect to reviewing the loan applications and interviewing Ms. Njeru, Njorge, Hoven, and Black with respect to the loan applications Petitioner assisted in preparing when they did not have businesses during the required time frame to obtain PPP or EIDL loans or grants.  Sent. Tr. 6-9.  SA Lott with the Office of the Inspector General for the SBA then testified as to how he calculated restitution based on the loan amounts in the various PPP and EIDL loans or grants which Petitioner had prepared with false information.  Sent. Tr. 12-18.  There is simply no basis to support a challenge to the manner in which the government reviewed material records when investigating Petitioner's case, and her conclusory allegations suggesting otherwise will not suffice.  See Hittson v. GDCP Warden, 759 F.3d 1210, 1271 (11th Cir. 2014) (rejecting generalized claims of ineffective assistance based on insufficient investigation where petitioner failed to identify additional necessary investigatory steps, mitigating evidence, or change to case outcome based on undiscovered evidence).

In other words, Petitioner has not identified a valid defense to the false statements charge to which she pleaded guilty that was conveyed to any of her pre-plea counsel that was not investigated.  Indeed, although Petitioner now claims in Ground Four counsel should have had "all" charges dismissed, her pre-plea counsel did manage to have all of the more serious charges from CR 322-009 dismissed as part of her plea agreement.  Likewise, Judge Bowen repeatedly explained, and Petitioner confirmed she understood, the entirety of her criminal

conduct would be considered at sentencing.  Thus, prior to entering her guilty plea, Petitioner was aware of her potential loss amount and restitution exposure.  She has not shown there was anything more counsel could have done with records she allegedly provided regarding how she obtained or spent SBA money that would have altered the decision to plead guilty to the one-count information for submission of a false EIDL application on behalf of Katina Wells.

Nor is there merit to the Ground Five claim of a Brady violation by the government. Nondisclosure by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  To establish a Brady violation, Petitioner must show:  "(1) the prosecution suppressed evidence; (2) the evidence was favorable to [the defendant]; and (3) the evidence was material to the establishment of guilt or innocence."  United States v. Jeri, 869 F.3d 1247, 1260 (11th Cir. 2017) (citation omitted).

Notably, however, even setting aside for the moment Petitioner's argument is based on her self-serving interpretation of tax and bank records which she claims exonerate her, "the Constitution does not require the prosecutor to share all useful information with the defendant prior to a guilty plea."  Tisone v. United States, Case Nos. 2:24-cv-1052 / 2:22-cr-39, 2025 WL 1434296, at * 6 (M.D. Fla. May 19, 2025) (citation omitted).  As explained by the Supreme Court, "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary*."  United States v Ruiz, 536 U.S. 622, 629 (2002).  Thus, even if Petitioner had made a plausible showing the government failed to disclose evidence Petitioner herself did not possess or could not obtain with reasonable diligence as part of her

37

Jackson Hewitt business records, Tisone, 2025 WL 1434296, at *6, Brady did not require disclosure by the prosecution prior to her guilty plea.

Similarly, Petitioner's claims that counsel should have objected to her prosecution under the Contracts, Takings, and Double Jeopardy Clauses are without merit, (doc. no. 57, pp. 46, 48), because any such challenge would have failed. The Contracts Clause does not apply to the federal government, only to the States. Cox Cable Commc'n, Inc. v. United States, 992 F.2d 1178, 1182 (11th Cir. 1993). Missing the point that she was not entitled to the proceeds of fraudulently obtained loans, Petitioner also contends the government prosecution deprived her of property rights by impairing her loan contracts, in violation of the Takings Clause. Notably, however, the Takings Clause does not require compensation unless private property has been taken for public use. See Support Working Animals, Inc. v. DeSantis, 457 F. Supp.3d 1193, 1215 (N.D. Fla. 2020) (citations omitted). Petitioner's restitution, however, is criminal punishment imposed under the Mandatory Victims Restitution Act ("MVRA"), Ellingburg v. United States, 607 U.S. _, 146 S. Ct. 564, 568-69 (U.S. 2026), and therefore, counsel would have had no viable Takings Clause challenge to make. See Bennis v. Michigan, 516 U.S. 442, 452-53 (1996). Similarly, counsel would not have had a viable challenge under the Double Jeopardy Clause because Petitioner has not identified any civil penalties pursued, let alone imposed, by the government,[2] and in any event, the Double Jeopardy Clause does not

---

[2]Petitioner states in conclusory fashion that "payroll data [was] already being addressed by the cooporation [sic] in civil remedies with IRS AND SOCIAL SECURITY," without providing any details. (Doc. no. 57, p. 46.) Nor does she claim to have provided any specific information to counsel about any IRS and Social Security issues that could have been further investigated. "The reasonableness of counsel's actions may be determined or substantially influenced" by the information provided by client. Strickland, 466 U.S. at 691.

prohibit the government from pursuing both civil and criminal penalties for the same offense. See Hudson v. United States, 522 U.S. 93, 98-103 (1997).

Simply put, Petitioner cannot meet the difficult standard for ineffective assistance of counsel, discussed in detail in Part II(B), because she has not suggested, let alone established, she would not have taken the benefit of the plea agreement and instead insisted upon going to trial on all of the charges in her original, indicted case, CR 322-009, as well potentially facing new charges. See Plea Agreement, p. 9. Petitioner has not identified any particular instance where she made any of her pre-plea attorneys aware of particular exculpatory evidence that was ignored or improperly investigated, let alone validly explain how any such evidence would have changed the outcome of her case. This is particularly true in light of Petitioner's attestation of guilt at the Rule 11 proceedings, after Judge Bowen stopped multiple times to ensure Petitioner agreed to the factual basis and understood the loss amount and restitution calculation would take into consideration the entirety of her fraudulent schemes. Petitioner has shown neither deficient performance nor prejudice.

In sum and as noted above, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal." Harris, 2011 WL 1740702, at *5. Petitioner is not entitled to relief on any of her claims in Grounds One through Six.

**D.     Petitioner Is Not Entitled to Relief on the Sentencing Ineffective Assistance Claims in Grounds Seven and Eight**

Petitioner also asserts Mr. Vines provided ineffective assistance at sentencing when he failed to: (1) effectively challenge the prosecution's presentation that was speculative and based on false testimony from SA Jack; and (2) present convincing mitigation evidence that

resulted in an above-the-Guidelines sentence and an improperly high amount of restitution to be repaid on a schedule that differed from the SBA loans.

Petitioner's claims in Ground Seven regarding the speculative nature of the prosecutor's presentation, as well as the allegedly false testimony of SA Jack, falter out of the gate because they are speculative and devoid of details. "[T]he § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading' as authorized under Federal Rule of Civil Procedure 8(a)." Borden, 646 F.3d at 810.

> To properly fact plead, a petitioner must state specific, particularized facts, which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.

Arrington v. Warden, No. CV 117-022, 2017 WL 4079405, at *2 (S.D. Ga. Sept. 14, 2017) (Hall, J.); see also McFarland, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements."). Thus, Petitioner's generalized claims about a speculative government presentation and unidentified false testimony based on a self-serving interpretation of business records – an argument already presented to Judge Bowen as described in detail herein – fail for lack of specificity. Moreover, examination of the record shows Mr. Vines made the best of the record to argue for the best possible sentence for his client.

Appointed after Petitioner fired her third retained defense team, Mr. Vines filed multiple objections to the PSI which were discussed extensively at sentencing, including the calculation of actual loss and a Guidelines sentence under U.S.S.G. § 2B1.1 based on loss amount, as well as denial of an acceptance of responsibility reduction. See PSI Addendum;

40

see generally Sent. Tr.  Judge Bowen had identified the calculation of loss and restitution as potential issues long before sentencing, and as discussed above in detail, made sure – repeatedly – at the Rule 11 hearing Petitioner understood the Court would consider the entirety of Petitioner's fraudulent activity.  In support of the detailed calculations in the PSI concerning loss, PSI ¶¶ 23-35, 67-68, the prosecution presented the testimony of IRS SA Jack and SA Lott with the SBA Office of the Inspector General to explain both the initial investigation and the review of documentation to make the loss and restitution calculations.  Sent. Tr. 4-21.

SA Jack testified (1) four individuals Petitioner helped with preparing PPP or EIDL applications said they did not have businesses during the required time frame to obtain money from the SBA, and (2) Petitioner's PPP loan applications contained a "gross inflation of her payroll," Sent. Tr. 6-10.  Petitioner claims, without explanation, the individuals interviewed "answered out of misunderstanding."  (Doc. no. 57, p. 42.)  There is nothing to identify or support any "misunderstanding" that Mr. Vines could have used to challenge SA Jack's testimony.  Nor is there any falsity identified in SA's Jack's testimony.  Rather, Petitioner has simply offered her own, after-the-fact exculpatory explanation to support her theory of having done nothing wrong.  There is simply no factually supported showing that SA Jack provide any false testimony to which Mr. Vines could have objected.

The PSI contained a detailed account of losses to the SBA caused by Petitioner's false submissions, and SA Lott further parsed the information in the PSI.  The plea agreement also contained a provision that the government would recommend an amount of loss capped at $550,000.  Petitioner did not object to that provision, and the government complied.  Sent. Tr. 34.  Petitioner's belated attempts to contend she now has voluminous business records to support her claim that money from the SBA loans she legitimately obtained was spent "for

41

business purposes" such that she never should have been charged with a crime, let alone been held responsible for at sentencing, fail to show Mr. Vines performed deficiently or that Petitioner was prejudiced at sentencing.

Indeed, when Judge Bowen asked if Petitioner's self-created summary of spending placed on Embrace Africa letterhead – Petitioner's company whose questionable legitimacy was squarely at issue in the government's investigation – was the only supporting documentation to challenge the government's calculations based on the case discovery materials, Mr. Vines replied, "Unfortunately." Sent. Tr. 5. Petitioner did not assert that she had documentation somewhere else that had been turned over to her attorney but not reviewed. Thus, in the nearly nine months between the change of plea proceedings and sentencing, (Rule 11 Tr. 27, 42; see also Plea Agreement, p. 5), the paltry summary was all that Petitioner apparently had to offer. There certainly was nothing Mr. Vines could have used in that document to challenge the government's presentation as speculative.

At sentencing, Petitioner testified she gave W-2s, 1099s, and payroll documents to her attorney and the probation officer who prepared the PSI. Sent. Tr. 30-31. When Judge Bowen asked if she was trying to rely on those documents to suggest she had not committed a crime, Petitioner did not pursue any suggestion of innocence or legitimate spending, and Judge Bowen had already explained how the money was spent is irrelevant. Sent. Tr. 5, 31-32, 35-36; see also United States v. Crowther, Case No. 2:20-cr-114, 2021 WL 50481, at *3 (M.D. Fla. Jan. 6, 2021) (explaining when alleged crime is not misspending PPP funds but rather making false statements to obtain funds in first place, manner in which ill-gotten funds spent not relevant to criminal liability for charged false statement offense). Petitioner's continued focus on how she spent the money to undercut the loss calculation does not further her cause

42

now anymore than it did at sentencing. Nor does it call into question the basis of the government's presentation at sentencing such that Mr. Vines would have had any reason to raise another or different objection.

Petitioner argues in Ground Eight that Mr. Vines failed to adequately present mitigation evidence at sentencing. Petitioner recites the oft-made statements touting her background, "charity work, education, family life and work involvement." (Doc. no 57, p. 14; doc. no. 58, p. 8.) She also maintains Mr. Vines failed to tell Judge Bowen she acted in good faith, did not misuse the loan proceeds, and that the loan applications she prepared for herself and others were based on legitimate tax returns and accurate payroll information. Of course, these assertions are all belied by the record, which as outlined in detail above, shows this information was presented to Judge Bowen at the Rule 11 hearing, in the detailed PSI, in the sentencing memorandum collecting supportive community letters on Petitioner's behalf, and the testimony at sentencing from Petitioner, two of her children, and a cousin. See Raheem v. GDCP Warden, 995 F.3d 895, 922 (11th Cir. 2021) (failing to present cumulative mitigation evidence not deficient performance by counsel).

Mr. Vines also argued for a low-end Guidelines sentence, and he successfully argued for a reduced loss amount from that set forth in the PSI that was in accordance with the terms of the plea agreement that the amount of loss would be considered more than $250,000 but less than $550,000. Sent. Tr. 36, 48. Judge Bowen explained repeatedly that he would be considering restitution for the full loss caused by Petitioner's total criminal conduct. Rule 11 Tr. 27, 42; Plea Agreement, p. 3. At sentencing, Judge Bowen had the benefit of a detailed account of losses to the SBA caused by Petitioner's fraudulent activities in both the detailed PSI and in SA Lott's explanation of how the restitution calculation was based on funds

43

received, the lender fees, and interest for each false loan for which she applied. Sent. Tr. 12-14, 20. Moreover, Mr. Vines did object to the total loss amount in the PSI and sought a restitution amount less than the amount calculated by SA Lott. See Sent. Tr. 3, 35; PSI Addendum.

While Judge Bowen imposed the statutory maximum sentence, there was no breach of the plea agreement because no particular sentence had been promised, and Petitioner knew Judge Bowen was not bound by the recommendation in the Plea Agreement and could impose a sentence up to the statutory maximum. Rule 11 Tr. 26; Plea Agreement, p. 3. To the extent Petitioner complains the 60-month prison sentence violated the Eighth Amendment, Mr. Vines had no valid argument on that point either, as generally, a sentence imposed within statutory limits is not excessive or cruel and unusual under the Eighth Amendment. See United States v. Moriarty, 429 F.3d 1012, 1024 (11th Cir. 2005).

Finally, Mr. Vines had no successful argument to make concerning the amount of restitution or the payment schedule for that restitution. The restitution amount need only be proven by a preponderance of the evidence. See 18 U.S.C. § 3663A. In fashioning a restitution order for actual loss directly and proximately caused by the offense of conviction, the probation officer must include a compete accounting of the losses to each victim, to the extent practicable. See id. § 3664(a). The detailed PSI did just that, and upon consideration of the PSI, the testimony of the government agents, and arguments of counsel, Judge Bowen concluded the government satisfied its burden of proof on the amount of loss based on "the only genuinely supported information before the Court." Sent. Tr. 36. As to a repayment schedule, Petitioner is complaining about repayment terms for loans she fraudulently obtained. Furthermore, Judge Bowen explained at the Rule 11 hearing, the Court may impose a payment

schedule for restitution, and even with such a schedule in place, the government may take all actions available to it to collect any of Petitioner's assets found. Rule 11 Tr. 28-29. Petitioner indicated she understood those terms and was accepting them as part of her plea agreement, id. at 29, meaning there was no valid basis for Mr. Vines to object to a repayment schedule that differed from a loan term.

As counsel cannot be faulted for failing to raise meritless claims, Petitioner is not entitled to relief on these ineffective assistance claims against Mr. Vines. See Pinkney v. Secretary, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." (citations omitted); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance claim based on failure to raise meritless issue because no prejudice can be shown). In sum, all of the ineffective assistance claims based on the performance of Mr. Vines at sentencing fail. Petitioner has not satisfied the two-part Strickland standard of deficient performance and prejudice from Mr. Vines's actions at sentencing to support a valid claim for relief, and none of the claims in Grounds Seven and Eight form a valid basis for relief.

**E.    Petitioner Is Not Entitled To Relief on Her Claims in Grounds Nine and Ten**

Petitioner also makes stand-alone claims regarding the reasonableness of her sentence, including alleged errors made in calculating the restitution amount and her Guidelines sentence. (Doc. no. 57, pp. 17, 24, 28, 3-44, 50-51; doc. no. 58, p. 8.) These claims are barred because they were not raised on direct appeal. In addition, the law is well-settled that restitution cannot be challenged under § 2255. Ramdeo v. United States, 136 F.4th 1348, 1353

(11th Cir. 2025); <u>Mamone v. United States</u>, 559 F.3d 1209, 1211 (11th Cir. 2009) (*per curiam*).

### 1. Claims Are Procedurally Defaulted Because They Were Not Raised on Direct Appeal

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills</u>, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Mills</u>, 36 F.3d at 1055-56 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). The actual innocence exception is exceedingly narrow in scope and must encompass factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998).

Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. <u>Spencer v. United States</u>, 773 F.3d 1132, 1138-40 (11th Cir. 2014) (*en banc*); <u>Montemoino v. United States</u>, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).

> Section 2255 does not provide a remedy for every alleged error in conviction and sentencing. When a prisoner . . . alleges that his "sentence was imposed in violation of the . . . laws of the United States . . . or is otherwise subject to collateral attack," a district court lacks the authority to review the alleged error "unless the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'"

Spencer, 773 F.3d at 1138 (citations omitted). Thus, to challenge an alleged sentencing error in her case as a "fundamental defect," Petitioner must prove she is actually innocent of her crime or that she has had a prior conviction vacated that was used to enhance her sentence. Id. at 1139. Petitioner has not proven she is actually innocent of her crime and has not alleged a prior conviction used to enhance her sentence has been vacated.

Petitioner pled guilty to willfully and knowingly submitting an EIDL application for Katina Wells containing a materially false, fictitious, and fraudulent statement claiming Ms. Wells had a business opened on December 1, 2019, that generated $2,114.00 in gross revenue and had $165.00 in cost of goods sold in 2019. Petitioner knew Ms. Wells did not own any business in 2019. None of Petitioner's arguments concerning the allegedly legitimate use of funds fraudulently obtained prove her actual innocence. Judge Bowen repeatedly informed Petitioner, and confirmed her understanding, that she would be held accountable for the full loss caused by her total criminal conduct. Petitioner's claims regarding legitimate use of funds fraudulently obtained have already been rejected; as Judge Bowen explained, "It doesn't matter how the money was spent if it was obtained wrongfully." Sent. Tr. 5; see also id. at 35-36 ("Moreover, with respect to questions of how monies were spent, it may seem important to [Petitioner], but it's unimportant to the Court because these loan forgivable or not or grants, EIDL, PPP or otherwise were obtained generally by false pretenses, false statements which is the offense to which she plead guilty."); cf. United States v. Woods, No. 4:22-cr-16-1, 2024

47

WL 1354586, at *12 (S.D. Ga. Mar. 29, 2024) (explaining penal statutes involving fraud seek to punish intent to obtain money by fraud and deceit and offering example that "when thieves return stolen money their earlier theft are not legalized or immunized"); United States v. Foster, Case No. 13-20063-CR, 2014 WL 12687616, at *7 (S.D. Fla. Mar. 31, 2014) (rejecting "no harm/no foul" argument motion for judgment of acquittal based on contention victims received what they bargained for because criminal statutes seek to punish intent to obtain money by fraud and deceit regardless of ultimate success or actual victim impact (citations omitted).)

There has been no valid argument, let alone establishment, of cause and prejudice for the procedural default, and Petitioner has not shown she is actually innocent.  As discussed above, Petitioner entered a knowing and voluntary guilty plea to the charge of submitting an EIDL application with false information concerning a material matter.  Her attempts to deny guilt are therefore not permitted.  Also unavailing is her argument for innocence because the application was denied automatically based on Ms. Wells's low credit score.  (Doc. no. 71, p. 15.)  "Any misrepresentations in the [EIDL] application . . . would have been material to the SBA."  United States v. Lawson, No. 24-10561, 2025 WL 1732735, at *3 (11th Cir. June 23, 2025).  Stated otherwise, the reason for denial of the application is immaterial to Petitioner's guilt and certainly does not establish actual innocence.

Also, as discussed herein, there is no valid ineffective assistance claim to excuse the default, and Petitioner herself documented her desire *not* to file an appeal when she signed post-conviction consultation certification.  (See doc. no. 37.)  Moreover, as none of these sentencing claims could be validly construed as constitutional, jurisdictional, or presenting an error so fundamental as to have resulted in a complete miscarriage of justice, they are not

reviewable in these § 2255 proceedings.  See United States v. Addonizio, 442 U.S. 178, 186 (1979) ("There is no claim of a constitutional violation; the sentence imposed was within the statutory limits; and the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid.")

### 2.      Even if the Claims Were Not Barred, They Form No Basis for Relief

The law is well-settled that restitution cannot be challenged under § 2255.  Ramdeo, 136 F.4th at 1353; Mamone, 559 F.3d at 1211.  In any event, SA Lott provided the basis for the calculation of the loss amount and the PSI provided a detailed explanation of the calculation of the loss, including the acknowledgment the SBA had forgiven multiple PPP loans Petitioner had fraudulently obtained.  PSI ¶ 67.  Petitioner belatedly attempts to submit documentation interpreted to support her self-serving theories of using wrongfully obtained money for permissible purposes.  Not only do Petitioner's arguments fail regarding the allegedly improper inclusion of forgiven PPP loans in the loss amount calculation, but the cases she cites in support of these meritless arguments do not exist at the designated citations.  (See doc. no. 71, p. 13, citing United States v. Bennett, 983 F.3d 1175 (11th Cir. 2020) and United States v. Redd, 997 F.3d 1183 (11th Cir. 2021).)  The citation for Bennett comes back to Crowson v. Washington Cnty. Utah, 983 F.3d 1166 (10th Cir. 2020), and the citation for Redd comes back to Beck v. Dep't of Navy, 997 F.3d 1171 (Fed. Cir. 2021).  Neither case has any relevance to the loss calculation for falsely obtaining a PPP loan, let alone any precedential value within the Eleventh Circuit.

In sum, the evidence discussed herein and documented in the record amply supports the loss amount used by Judge Bowen to determine a Guidelines sentence and impose restitution.  Moreover, as Judge Bowen varied from the Guidelines sentence to impose the

statutory maximum, any alleged error that would have lowered the Guidelines calculation, which to be clear Petitioner has not established, would not have impacted the sentence. This is because Judge Bowen announced a fair and proper sentence that includes the element of deterrence "must be more severe than the guidelines that have been filed." Sent. Tr. 55-56.

In sum, Grounds Nine and Ten form no basis for relief in these § 2255 proceedings.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the motion to dismiss be **GRANTED**, (doc. no. 68), the § 2255 motion be **DISMISSED** without holding an evidentiary hearing, (doc. no. 57), the motions to supplement the record prior to ruling on the motion to dismiss be **DENIED** (doc. no. 72, 73), this case be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 30th day of April, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA